### GRUPPE v. KINGSLEY.

(District Court, E. D. Pennsylvania. November 22, 1915.)

No. 3448.

1. SALES ☞359—ACTION FOR PRICE—TITLE OF SELLER—EVIDENCE.

That plaintiff had possession of the picture, which he sold to defendant, and testified that he owned it, having bought it abroad, is sufficient to go to the jury, in an action for its price, on the issue of his title, though being requested, on cross-examination, to spell the name of the owner, he gave that of F.; the jury being directed to determine what he meant thereby, whether that F. was then the owner, or merely that he was the man from whom plaintiff had obtained it.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 511, 1056–1059; Dec. Dig. ☞359.]

2. TRIAL ☞251—ACTION FOR PRICE—ISSUES—INSTRUCTIONS.

The jury are properly instructed, in an action for the price of a picture as sold and delivered, not to consider the questions of its genuineness or commercial value; both parties denying a warranty, and defendant admitting the price, but asserting that he was given the right of inspection before purchase, and that after inspection he refused to purchase.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. ☞251.]

3. SALES ☞360—EXECUTED CONTRACT—MEASURE OF RECOVERY.

The measure of recovery in case of sale and delivery is the price notwithstanding an attempted return of the article by the buyer, refused by

the seller; the difference between the price and the value being the measure only in case of breach of an executory contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1060–1062; Dec. Dig. ☞360.]

At Law. Action by Charles P. Gruppe against Joseph T. Kingsley. Sur motion of defendant for new trial. Rule discharged.

Ralph N. Kellam, of Philadelphia, Pa., for plaintiff.

Wescott, Wescott & McManus, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This motion of defendant is based upon three grounds. The very earnest argument of counsel merits a full discussion of the questions now raised even at the cost of an over-lengthy opinion. We will follow the order of discussion adopted by counsel, first, however, preliminating the facts out of which the questions discussed arise.

The plaintiff is an artist and art dealer. The defendant is a collector of paintings, who wished to add to his collection a work of the artist Anton Mauve. The plaintiff was going to Holland. An understanding was reached that, if he should find a painting by Mauve, he should submit his find to the defendant. He found the painting, which is the subject of the present dispute, and brought it to this country. Out of what took place between the parties has sprung this controversy.

The only issues raised by the evidence were three, and in practical effect one. The plaintiff based his claim upon the simple fact of a sale and delivery of the painting for the agreed price of $5,000. The defendant denied the sale, and averred the painting to have been turned over to him for inspection and examination, to be purchased or returned as he might, after such examination, decide. He further avers his final refusal to purchase. The replication denies the refusal and asserts acceptance, a completed purchase, and a positive promise to pay the $5,000.

The trial issues and evidence were such that at this stage of the case we are bound to assume the findings of the jury to have been against defendant on the first issue, with him on the second, and against him on the third. The latter is the one real issue to which we referred.

[1] The first issue raised the question of the title of plaintiff to the picture, and the first complaint is of the manner of the submission of this question to the jury. The principles of law applicable to this phase of the case are these: Where an action is for a thing sold and delivered, the question of title necessarily enters into it. One reason is the manifest injustice of compelling the defendant to pay the price and then to lose the thing bought on claim of the real owner. Another reason is the more technical one (arising out of the possible facts of this case) that if the plaintiff is not the owner of the thing sold, but is merely the agent of the owner, and has made the sale for his principal, the right of action is in the principal, and not in the agent. This latter principle has its exceptions, of which, for illustration, the case of an agent acting under a del credere commission is one.

The grounds upon which the exceptions are based are obvious. We feel justified in premising that the objection now made is more formal than real. No suggestion is made that there is any danger of dispute over the title to the picture. Defendant is none the less to be accorded all his rights. The possible facts lie within the limits of the plaintiff having secured possession of the painting without having any title whatever and having bought it from the owner. Intermediately is the possibility that he may be acting merely as the agent of the true owner. No emphasis was given to this phase of the case, and in consequence the evidence upon the question of ownership was not as full as it might have been. This was doubtless because counsel for plaintiff did not anticipate the question being raised. The jury has found the fact in favor of the plaintiff. The evidence in support of this finding is that plaintiff had possession of the painting and his own testimony that he owned it, having purchased it in Holland. The only thing approaching evidence contra was plaintiff's answer to this question on cross-examination, "Will you spell for me the name of the owner of the picture?" The answer gave the spelling. There was no disclosure of the purpose of the question, or the use to be made of the answer. On the contrary, both were carefully concealed until the plaintiff had closed his case.

The trial judge instructed the jury that in every case of a bargain and sale of chattels a warranty of title by the vendor was implied, and the burden of making good such implied warranty by the proofs was upon the plaintiff. The instruction further was that, if the defendant did not get a good title to the picture through this sale, the plaintiff could not recover. The jury was further told, however, that possession of personal property is evidence of title, and the evidence was marshaled on the side of the plaintiff in support of title, the fact of possession, and opposed to it all the other evidence in the case, including the acknowledgment by the plaintiff of title in another. The jury were invited to determine what the plaintiff meant by his testimony—whether he meant Fliermans was then the owner of the painting, or merely that he was the man from whom the plaintiff had obtained it. The jury found the fact against the defendant.

The acoustics of the room in which trials are held is so vile that the trial judge can never be sure he has heard all the testimony of a witness. In consequence, he ignored the positive testimony of plaintiff (which it was admitted at the argument he had given) of the purchase of the picture by him. Plaintiff might complain of this omission, but surely the defendant cannot. The whole charge upon this point was in accord with defendant's theory of the case, except the instruction that possession is evidence of title. We understand defendant's counsel to concede the correctness of this statement of the law. The complaint, therefore, is reduced to one of complaint against the finding of fact. This we would not feel justified in disturbing.

The cases to which we have been referred by counsel for defendant must be accepted as authoritative statements of the propositions of law which they present. These are in effect that the doctrine of market overt does not obtain in Pennsylvania, and that no one (with certain recognized exceptions) can transfer to another a title which he does

not himself have. The doctrine of these cases, however, has no appellate application to the present case, because the law as thus laid down was applied and followed. The case in this feature turns, not upon the law, but, as already stated, upon a finding of fact.

[2] The second complaint is of the exclusion from the consideration of the jury of the questions of the artistic merits of the painting and of its commercial value. The jury was directed not to constitute themselves a jury of artists to determine the first question, nor were they to find whether the price agreed upon was a high price or a low price. The instruction was that (in this aspect of the case) the whole question was one of contract and its breach. The justification for this instruction was in this: There is no room for doubt that defendant wanted a Mauve, and wanted to be sure that whatever was submitted to him as a Mauve was genuine. It is too clear for dispute that he was bargaining upon this basis, and upon none other. The plaintiff wanted to close the bargain. We may therefore assume that he accepted as a condition of any possible bargain he might make that he must find a genuine Mauve, and be able to convince the defendant of its genuineness. He found this picture, which as he thought, met all the bargain conditions, and he offered it to defendant. The right of defendant to prescribe the conditions of the bargain he would make must be admitted. He might have bargained for this picture upon condition that it was a genuine Mauve. As a sure method of engrafting this condition upon his bargain, he might have required of plaintiff a formal warranty of genuineness. On the other hand, it is just as clear that he might have waived the warranty and relied upon making it a condition that he should have the right of inspection and examination before purchase, and base his acceptance or rejection upon his own judgment, aided, if he chose, by the judgment of friends or experts to whom he might submit it. The facts of the case are such as to leave no room for doubt that he chose the latter course. The defendant himself makes this clear and emphatic. He says he did in this case what he always did. He wanted to feel sure the picture was genuine—wanted all the evidence he could get; but he refused to accept and rely upon what he called the guaranty (warranty) of any one. What he demanded and was given was the right of inspection before purchase. If he decided after examination to take the picture, he took it on his own judgment, regardless of any representations made, or what any one else thought about it, except, of course, so far as the representations or opinions of others might be persuasive and affect his own judgment. We subscribe to the proposition advanced by counsel that warranty is not a matter of form, or of words, but is a substantive fact.

The doctrine of the case of McFarland v. Newman, 9 Watts (Pa.) 55, 34 Am. Dec. 497, is applicable here. It is that, to constitute a warranty, "the vendor must have actually consented to be bound by the truth of his representations." There is in this case no complaint or suggestion even of fraud or overreaching. The defendant does not charge that he was fooled into making a purchase, but denies that he made one. If the plaintiff had averred a warranty bargain, he must, of course, have proved compliance. If defendant had introduced evi-

dence of such a bargain, genuineness would have been in issue. As both parties denied there was any warranty, it is difficult to understand how it can get into the case. As it is with the warranty, so it is with the value of the painting. The plaintiff set up a purchase at the agreed price of $5,000. The defendant denied the purchase, but admitted the agreed price was $5,000. How could the jury find that the warranty had or had not been lived up to, if there was no warranty; and what use could they have made of their finding that the picture was worth more or less than $5,000, if that was the price agreed upon?

There was quite a little testimony and evidence introduced by both plaintiff and defendant on the subject of this painting being a genuine Mauve, and some upon the question of its value. It was not objected to, and was in consequence admitted. Had there been a charge of fraud, it would have had a bearing upon that question. As the evidence was in, it could be considered as having whatever bearing it had on the question of purchase or no purchase. It seems clear, however, that it was not worth the jury's while to take the time to make a specific finding of either the genuineness or commercial value of the painting, and they were so instructed.

[3] The third complaint is of what counsel have termed "the measure of damages." The argument seems to go to the extent of asking us to hold that if defendant bought this picture for $5,000, and tendered it back, then the plaintiff's loss would be the difference between the price and the value as found. If this be the law, then, as plaintiff admitted the painting to be worth at least $5,000, he had sustained no loss, except to the amount of the expenses to which he had been put. In this view, the verdict is undoubtedly too high. Is this the correct view? We hesitate to put or answer this question, because we cannot think the view stated is that intended, although such seems to be the case.

Counsel has referred us to a number of rulings on the subject of damages. All cases in which such a measure of damages has been applied were (must have been) cases of breaches of executory contracts. There the measure, of course, is the difference between the agreed and the market price. The doctrine of such cases could not be applied to an action, as this is, for goods sold and delivered. It would be again true, of course, that if the vendee had returned the goods so sold and delivered, and the return had been accepted by the vendor under circumstances which were the equivalent of a rescission of the delivery, the case might get back to the equivalent of the breach of an executory contract to purchase. Such was not set up at the trial to have been the case here. The defendant, it is true, attempted to return the painting; but the plaintiff, far from accepting its return, refused to accept it, and held the defendant to his bargain, and the picture remained subject to defendant's disposition.

It was made clear at the argument that, had such a position as that indicated in the suppositious case been taken by the defendant here, it could have been overwhelmed by the proofs. No such position was taken at the trial, and it cannot be made the basis of an application for a new trial. We are persuaded, and have no doubt the jury were, that the bargain was just what the defendant says it was. Had there

been nothing else in the case, the verdict called for would have been one for the defendant. There was, however, much more in the case. After examining the painting in New York, the defendant expressed himself as satisfied with it. Following this, the painting was sent to Philadelphia and was in defendant's possession. He wrote the defendant of its arrival, and was apparently more than pleased, somewhat elated, indeed, over his purchase, and promised his check in payment. Then came the financial stringency due to the conditions brought about by the war. The defendant then wrote the plaintiff, asking to be relieved of the purchase. This was put upon the ground of the financial strain, and the expectation that plaintiff could sell the painting for as high or a higher price. We are not unmindful of the explanation which defendant gives, and which his counsel ably elaborates, of these letters. None the less it was the plain duty of the trial judge to submit them, along with the explanation and the other evidence, to the jury. The effort was to do this as fairly as could be for the defendant. This a re-reading of the charge convinces us was done. The question became a jury question, and has been disposed of as such. It must be conceded there is no just ground of interference by the court.

The rule for a new trial is discharged, and plaintiff has leave to enter judgment on the verdict. No execution is, however, to issue without leave of court, so that defendant may have an opportunity to present evidence of the fact, if it develops to be the fact, that no title to the painting passed by the sale.